IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 1, 2011

**STATE OF TENNESSEE v. CHRISTOPHER BANKSTON**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 08-01127     Lee V. Coffee, Judge**

---

**No. W2010-01269-CCA-R3-CD  - Filed August 17, 2011**

---

A Shelby County jury convicted the Defendant-Appellant, Christopher Bankston, of aggravated robbery, a Class B felony.  He was sentenced to a twelve year term of imprisonment in the Tennessee Department of Correction.[1]  The sole issue presented for our review is whether the evidence is sufficient to support his conviction.  Upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Stephen C. Bush, District Public Defender; Tony N. Brayton, Assistant Public Defender, for the Defendant-Appellant, Christopher Bankston.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Rachel Newton, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

A little after 7:00 a.m. on the morning of September 24, 2007, Johnson Benny McBride,[2] the victim, was robbed at the M&M Market in Memphis, Tennessee. The victim, a regular customer at the M&M Market, had just purchased a pack of cigarettes.  Although

---

[1]The judgment reflects that this sentence was ordered to be served consecutively to another unrelated case.

[2]The victim's name is spelled as "Johnston" and "Johnson" throughout the trial transcript. We will spell his name consistently with the indictment, "Johnson McBride."

there were no street lights, the victim said "it was not bright sunshine [outside], but it was not dark." The victim described the events leading up to the robbery as follows:

> I was walking to my truck which was parked on the side of the store. As soon as I turned around to confront whoever was behind me, because they was awful close, the gentleman put a gun up to my face and told me he was going to blow my head off, or actually my white MF head off if I did not give him my money.

The victim identified the perpetrator as the Defendant-Appellant. He said the Defendant-Appellant had on a white and black plaid jacket with a dark pair of pants that could have been blue jeans. The victim stated that two men were behind him. He could not identify the second man and believed that he was "watching out for" the Defendant-Appellant. The victim described the gun as follows:

> It was an automatic. It could have been a nine. It had a, of course it was metal. It has a clip in it because as he pointed it at my face, I got a good view at it. As soon as we got on the side of the truck, he lowered it to my chest level.

The victim told the Defendant-Appellant that he did not have any money, and the Defendant-Appellant "verbally cussed [the victim]." The victim emptied his pocket and estimated that he gave the Defendant-Appellant "roughly ninety-two [dollars] with change." Because the victim believed there was a camera on the outside of the M&M Market, he walked to the front of his truck, emptied his wallet on the hood of the truck, and told the Defendant-Appellant that he could have his credit cards. The Defendant-Appellant declined to take the credit cards. The victim said he dropped his pack of cigarettes on the ground, and the Defendant-Appellant picked it up and gave it to the victim. Following another exchange of words, the victim was permitted to leave in his truck. The victim initially tried to follow the perpetrators because they left on foot and headed toward the Wooddale Apartments. However, the victim ultimately returned to the M&M Market to report the robbery and told the clerk to check the store's video camera.

The victim testified that a police officer came to his place of employment and took his statement. Some time later, another officer from the crime scene unit came to the victim's place of employment and retrieved the package of cigarettes, which the Defendant-Appellant had retrieved from the ground. The cigarette pack was admitted into evidence as exhibit three. The video taken from M&M Market was admitted into evidence as exhibit four and played for the jury. The victim identified the Defendant-Appellant as the person in the video who held a gun on him and demanded his money. The victim was also previously shown a photographic lineup containing six individuals from which he identified the Defendant-

Appellant as the perpetrator. This photographic lineup was admitted into evidence as exhibit six. The victim further stated that he had identified the Defendant-Appellant as the perpetrator of the instant offense at a prior court hearing in the matter.

Memphis Police Officer Jerome Johnson responded to the M&M Market following the report of the offense. Officer Johnson recalled:

> Once I got there I talked to the victim. He came up to me and told me he had just got robbed and I got his I.D., started my report, went inside and talked to the clerk on the inside to see if they had any video of the incident and he had video, but he had trouble working the video tape to rewind it so I could look at the video and the only part of the video that I did see was when the victim came in and the alleged suspects followed behind him.

Officer Johnson "was not exactly sure where at in the area of the store" that he took the victim's statement. He did not know if the victim was "in the front or to the side of the store." However, he was certain that the victim was in that general area. Officer Johnson said he did not view a video which showed the area where the victim's car was located and was unaware if such video existed. Officer Johnson also testified that the victim reported that "the person that robbed him had a gun stuffed in the front in the waistband of his pants."

Officer Lavern Jones of the Memphis Police Department Crime Scene Unit met the victim on September 25, 2007, and retrieved exhibit three, the package of cigarettes dropped by the victim during the robbery and handled by the perpetrator. Officer Jones processed exhibit three, found "ridge detail," and preserved it on a print card admitted into evidence as exhibit nine. On cross-examination, Officer Jones explained that she lifted the "ridge detail" from the "plastic that surrounds the pack itself." Officer James Hill, a latent fingerprint and palm print examiner with the Memphis Police Department, testified that it was common to receive print cards where ridge details have been found but determined insufficient to make a positive fingerprint identification.

Lieutenant Kedzie White of the Memphis Police Department was the primary investigator of the instant offense. He obtained the video surveillance from the M&M Market, developed a photographic lineup, and showed it to the victim. The victim identified the Defendant-Appellant as the perpetrator, and the Defendant-Appellant was arrested as a result. Lieutenant White requested all of the store's surveillance. This included video footage from inside of the store and anything that would have been available from the parking lot or pump area. He received only one video from the M&M Market which showed the victim enter the store followed by two male suspects shortly after he completed his transaction at the cash register. The video further showed the victim leave the store followed by the same two individuals.

The Defendant-Appellant was given his <u>Miranda</u> rights, which he waived, and provided a statement of admission to the instant offense. The statement was given on October 22, 2007, at 7:05 p.m., admitted at trial as exhibit 11, and provided in pertinent part as follows:

QUESTION: Did you participate in the robbery of Johnston McBride which occurred at 4835 Winchester on September 24th, of 2007 at approximately 7:20 a.m.

ANSWER: Yes. I participated.

QUESTION: Did anyone else participate in this robbery with you? If so, name them.

ANSWER: No, sir.

QUESTION: Were you armed with a weapon? If so, describe it.

ANSWER: A pellet gun.

QUESTION: Was anyone else armed? If so, describe the weapon.

ANSWER: Not that I remember.

QUESTION: What was taken in this robbery?

ANSWER: Petty stuff. Like forty bucks, some smokes, but I was like, "No, man. Keep your smokes."

QUESTION: What did you receive from this robbery?

ANSWER: "Just the forty something dollars. I didn't take his smokes. That's just low down right there."

QUESTION: Was a vehicle used in this robbery? If so, describe the vehicle.

ANSWER: No, sir.

QUESTION: Describe in detail the events prior to, during, and after this robbery.

ANSWER: Before, my little brother Rico asked me to go take him to school, but before he was going to school he wanted to get a black. I offered to walk him to the store. As we walked into the store, that's when I saw dude and I followed him out to the parking lot and asked him to give me some money and he gave it to me. He had cigarettes and he dropped them on the floor. I looked at him and I said, "Here man. You can keep your cigarettes." That was it.

. . . .

QUESTION: When you asked him for the money, did you display your weapon?

ANSWER: I had it down. I didn't point it at him, but I had it down on my side.

The victim was recalled to testify and his prior statement to police was admitted into evidence as exhibit twelve. The victim was then cross-examined extensively regarding the following: (1) whether he told the police that the gun was in the perpetrator's waistband or whether the gun was held only to the victim's face; (2) whether the victim reported the crime by placing a telephone call to the police from his place of employment or whether the victim met the police at the M&M Market; (3) whether the perpetrator took money from the victim's pocket or the victim's wallet; and (4) whether there was a video camera recording the outside of the M&M Market where the robbery occurred. Despite the officers' testimony to the contrary, the victim maintained that (1) the perpetrator held the gun to his face, (2) he provided his statement to the police at his place of employment; (3) the perpetrator took money that he emptied from his pocket; and (4) he believed there was a video camera outside of the M&M Market that recorded the robbery.

Based on the above proof, the jury convicted the Defendant-Appellant as charged in the indictment. He was subsequently sentenced to a twelve-year term of imprisonment in the Tennessee Department of Correction. The instant appeal followed.

## ANALYSIS

Given the conflict between the victim's statement and the police officers' statements, the Defendant-Appellant contends that the evidence was insufficient to support his aggravated robbery conviction. In response, the State argues the evidence is sufficient to support the aggravated robbery conviction. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958

S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt; therefore, a defendant on appeal has the burden of showing that the evidence is insufficient to support the jury's verdict. State v. Thacker, 164 S.W.3d 208, 221 (Tenn. 2005) (citing State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659 (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing Tuggle, 639 S.W.2d at 914).

In order to sustain a conviction for aggravated robbery as charged in this case, the state must prove that the defendant intentionally or knowingly committed a theft from the person of another by violence or putting that person in fear while employing a deadly weapon. T.C.A. §§ 39-13-401(a), 39-13-402(1). Theft of property is defined as knowingly obtaining or exercising control over property "without the owner's effective consent" and "with the intent to deprive the owner" of the property. T.C.A. § 39-14-103.

When viewed in the light most favorable to the State, as we must, we conclude that the evidence supports the jury's conviction of aggravated robbery in this case. The record shows that the victim was ordered to give his money to the Defendant-Appellant. Regardless of where the gun was positioned, the victim complied with the command because the victim was put in fear by virtue of the gun. The victim identified the Defendant-Appellant as the perpetrator of the offense in the photo lineup, at the previous court hearing, and at trial. Finally, the Defendant-Appellant provided a statement of admission as to his involvement

in this case. Here, the Defendant-Appellant seeks to overcome his conviction based solely on attacking the victim's credibility. This court has repeatedly held that questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the jury as trier of fact. Bland, 958 S.W.2d at 659. We are required to resolve the conflicts in the trial testimony upon which the Defendant-Appellant relies consistently with the jury verdict. Tuggle, 639 S.W.2d at 914. This court will not reweigh or reevaluate the evidence. Bland, 958 S.W.2d at 659. Accordingly, the evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that the Defendant-Appellant was guilty of aggravated robbery. The Defendant-Appellant is not entitled to relief.

## CONCLUSION

Based on the above facts, law, and analysis, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE